[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION MOTION TO VACATE ORDER AND REARGUE
At a hearing held on August 20, 2001, the parties appeared before the court on the defendant, Robert C. Cohan's claim for exemption from wage execution. The plaintiff, appearing through counsel, informed the court that it would not be pursuing the wage execution it served on his employer. The court so noted the plaintiff's withdrawal on the order portion of the exemption form.
Presently before the court is the plaintiff's "Motion to Vacate Order and Reargue," which is brought on the obviously mistaken ground that "the court apparently `withdrew' the plaintiff's wage execution. The case was not called to be marked ready. . . ." As reflected in the transcript appended to this ruling, the court entered the order that the plaintiff now seeks to vacate and reargue at the request of plaintiff's counsel. Accordingly, the motion to vacate d reargue is denied.
Peck, J.
 STATE OF CONNECTICUT SUPERIOR COURT JUDICIAL DISTRICT OF HARTFORD CT Page 986 AT HARTFORD AUGUST 20, 2001 DOCKET NO.: FA99-0592856
FLEET NATIONAL BANK ) v. ) ROBERT COHAN )
BEFORE: THE HONORABLE A. SUSAN PECK, JUDGE
APPEARANCES:
NEIL PAUL, ESQ., FOR THE PLAINTIFF
ROBERT COHAN, PRO SE
 KELLY LAUGHERY COURT MONITOR
1 THE COURT: Anything else? 2 MR. PAUL: Fleet and Cohan. Good afternoon, 3 Your Honor. 4 THE COURT: Final matter on the wage 5 modification. Is this Robert Cohan? 6 MR. PAUL: It is. Mr. Cohan, if you would 7 just stand up here. I'm Neil Paul. I represent 8 the bank. 9 THE COURT: I'm sorry, your name again? 10 MR. PAUL: Neil Paul. 11 THE COURT: All right. I just want to tell 12 you I typically recuse myself from Fleet Bank 13 matters; however, I understand that there is a 14 shortage, you know, it's vacation time and there 15 aren't very many judges around. 16 MR. PAUL: This is an easy one, Your Honor. 17 We've agreed to not pursue the wage execution. 18 THE COURT: Oh. 19 MR. PAUL: So his motion can be granted. 20 THE COURT: Okay. The original motion — sir, 21 your name, sir? 22 MR. COHAN: Pardon me? 23 THE COURT: What is your name? 24 MR. COHAN: Robert Cohan, C-o-h-a-n. CT Page 987 25 THE COURT: Mr. Cohan, this letter is from 26 you? Did I see this two — this handwritten — is 27 this your letter, sir?
1 MR. COHAN: Yes. 2 THE COURT: Consisting of — it's actually two 3 sheets of paper, but it's written on four sides. 4 It doesn't have a date on it. So I'm just going 5 to ask the — I don't know when you mailed this 6 in, or when you wrote it. When did you write 7 this, sir? 8 MR. COHAN: Just recently. I think within the 9 last three weeks. 10 THE COURT: Okay. And when you say — 11 MR. COHAN: I have a copy of it. 12 THE COURT: Okay. It looks like the top of it 13 is torn off. I don't know whether it was just 14 torn off of the pad. I have a — you know, I 15 mean, the letter is just not dated. That's the 16 only — 17 MR. COHAN: Have you been able to read it, 18 Your Honor? 19 THE COURT: Oh, it's totally legible. Is this 20 what you referred to as a motion? or are you 21 referring to the modification on the — 22 MR. PAUL: I was referring to that particular 23 paper that you're holding in your left hand. 24 THE COURT: The modification? 25 MR. PAUL: Yeah. He didn't put a figure on 26 there, but he — 27 THE COURT: Okay.
1 "I can hardly meet my living expenses. I've 2 attached a letter explaining my financial 3 situation. Paying any amount at this time would 4 place me in a very precarious position." 5 And that letter is the one that I just held up 6 to you, Mr. Cohan? 7 MR. COHAN: I'm pretty sure — 8 THE COURT: That's the letter that you're 9 referring to. Correct? 10 MR. COHAN: Yes. 11 THE COURT: All right. 12 MR. COHAN: Yes, Your Honor. I'm sorry. 13 THE COURT: Okay. 14 MR. COHAN: Can I just say something? CT Page 988 15 THE COURT: Yeah. It's really not necessary 16 because I'm going to grant your request not to pay 17 anything. You're welcome to say something, but I 18 just want you to know that I will grant your 19 request. Is there a wage execution now or — has 20 there been an execution — 21 MR. PAUL: There's been one submitted to his 22 employer, which, then he received notification of 23 that. And that's why we're here today. No money 24 has been taken out at this point. 25 THE COURT: Oh, I see. Okay. 26 MR. PAUL: Your Honor, just for the record, I 27 want to make it clear that there is a judgment of
1 $31,000. We do have a judgment lien on his 2 property. I don't want Mr. Cohan to be confused 3 into thinking that this is — means we're not 4 going to pursue — 5 THE COURT: — collecting on that judgment. 6 MR. PAUL: Correct. At this point, we're 7 simply not pursuing the wage execution. 8 THE COURT: Okay. Do you understand that, 9 sir? They're not going to pursue — the 10 plaintiff, Fleet Bank, is not going to pursue the 11 wage execution. 12 MR. COHAN: Right. But I wanted you to, 13 understand how this all came about. Because I 14 refinance my home to pay the bank $65,000 and put 15 myself in a very deep hole by doing it. 16 THE COURT: Yeah. 17 MR. COHAN: And at the time I was told by the 18 man I was negotiating with "at the Fleet Bank that, 19 "Are you going to come after me for the rest of 20 it? If you're not, please send me a letter 21 absolving me of the obligation." He said, "We 22 can't do that Mr. Cohan." So, finally, I got a 23 letter where I paid off the 65,000, went to the 24 president of my bank in Farmington, who loaned me 2S the money on a refinance deal, which was very 26 close. And I thought that was the end of it. And 27 that was — go back to 1996 when I refinanced my
1 house. And they've been chasing me every since. 2 Now, ' they attach my wages. I'm a broker. I don't 3 have the income. I had a very disastrous thing 4 happen to me in 1988 when North American CT Page 989 5 Investment, which I was working for with my son 6 and eight other brokers, went under. 7 THE COURT: Right. 8 MR. COHAN: I ran the only division that was 9 profitable for them. 10 THE COURT: Yeah. 11 MR. COHAN: Since that happened, I lost 12 customers because they had the notes that I had 13 bought myself. I had 52,000 shares of their 14 stock, which is worth nothing today. I lost 15 everything. I had to sell my retirement account. 16 And I explained to the bank — my wife's had two 17 operations for cancer. And she goes for pulmonary 18 exercises to St. Francis Hospital twice a week. 19 I'm living month to month on the edge. I'm 77 20 years old. I asked them to forgive me. 21 Their earnings, the Fleet Bank, was down 45 22 percent in the second quarter of this year; my 23 earnings were down almost 65 percent. I don't 24 make the money I used to make, back in the days 25 when I borrowed the money. And I have never 26 denied to them that I owe the money. That's not a 27 question. I made some poor judgments. And I've
1 — trying to throw myself at the mercy — at this 2 age in my career, having my wages attached. It's 3 embarrassing. I just don't know what to say 4 anymore. 5 But he — $5 a week? What is the bank going 6 to do with $5 a week? Can you tell me that 7 institution can't absorb that and write it off to 8 give somebody a chance to live the rest of their 9 life in a little peace. I mean, I'm getting 10 chased by them. And he's a very understanding 11 person, the attorney here, but it's beyond that. 12 I don't have the income. I have to make $1,583 13 minimum a month on commissions in order to break 14 even, Your Honor. I've sent him a listing of all 15 my obligations: $1,754 a month for my mortgage; 16 $243 a month for my car; $163 for oil; $102 on my 17 insurance, so I have some money to bury my wife, 18 who's dying. I mean, what — you know the rest of 19 it things. 20 I have not been in arrears on any of my 21 mortgage payment, my car payment, or any of my 22 light — any payments for the last two years. I'm CT Page 990 23 clean as a whistle that way. But I'm fighting 24 every month with a nervous situation to make ends 25 meet. Now they want $5 a week. What is that 26 going to gain for anybody? 27 THE COURT: Well, he's not even asking for
1 that. 2 MR. PAUL: I'm not, Your Honor. 3 THE COURT: He's just withdrawing the claim. 4 It will not be in wage execution, Mr. Cohan. 5 There will not be a wage execution. All he's 6 saying is that the bank just wants you to 7 understand, and that he wants you to understand 8 that the bank is not saying that you don't owe 9 them. They're not saying they're not going to 10 pursue 31,452.25. If you buy a lottery ticket and 11 hit the Powerball, worth 170 million dollars this 12 week, they want to be able to claim — 13 MR. COHAN: Let them dream on. I haven't even 14 got the money to buy a Powerball. 15 THE COURT: Okay. But that's all he's saying. 16 And I — I just want to make sure that you 17 understand that. 18 MR. COHAN: The only way I'm keeping ahead 19 is — if I have a good month, I save the money. 20 We don't go anywhere. We haven't been on vacation 21 since 1986. 22 MR. PAUL: Your Honor, I don't know if 23 Mr. Cohan doesn't understand that I'm not, at this 24 point, chasing him. 25 THE COURT: Yeah. They're not actively — 26 MR. COHAN: Yeah. But I've been to court 27 three times now, and they're not chasing me?
1 THE COURT: Well, he's telling me that 2 they're, basically, not going to chase you 3 anymore. But they just want you to understand 4 that there's still a judgment against you for 5 31,000. 6 MR. COHAN: Oh, so when I sell the house, they 7 get the 31,000. Is that it? 8 THE COURT: I don't know, sir. I don't think 9 he's saying he's going to pursue it, and I don't 10 think he's saying he's not going to pursue it. 11 He's just not making any representation — 12 MR. COHAN: You know it's like Goliath, David CT Page 991 13 and Goliath, Your Honor — 14 THE COURT: I understand. 15 MR. COHAN: — the financial institution. I 16 gave them 65,000. My God, give me a break. You 17 got 65,000, what do you want? Blood out of my 18 arm? I don't understand it. Isn't there any 19 mercy that the Court can show here? 20 MR. PAUL: Your Honor — 21 THE COURT: Well, the judgment is already 22 entered, sir. And I can't — I don't have the 23 authority to tinker with the judgment, you know — 24 MR. PAUL: Also, again, just for the record, 25 he did a motion for summary judgment, which was 26 granted in our favor. He admitted, as he has here 27 admitted it. He's also made several proposals for
1 smaller lump sum payments, which the client, our 2 client, rejected. 3 MR. COHAN: Yeah, one was for $8,000. I was 4 borrowing the money from a "relative. 5 MR. PAUL: Right. 6 MR. COHAN: Now, I can't — that relative 7 hasn't got the money to give me. Now he's paying 8 tuition for his son to go to college. They 9 wouldn't accept $8,000. That's what I'm getting 10 at here. 11 THE COURT: You know, the best I can tell you, 12 sir, is to just try to put this aside for now and 13 not — 14 MR. COHAN: I don't have to — 15 THE COURT: They're not pursuing the wage 16 execution. He's made that representation in 17 Court. He's an officer of the Court, and I think 18 you, certainly, can take him at his word. 19 MR. COHAN: Do I understand correctly, 20 Your Honor, that — 21 THE COURT: I just wrote right on here the 22 order page that the plaintiff has withdrawn their 23 wage execution — its wage execution. 24 MR. COHAN: So I don't have to pay anything. 25 THE COURT: Not now. There's still a judgment 26 against you. That's all I want you to 27 understand —
1 MR. COHAN: Yeah, at some point — 2 THE COURT: — that you don't have to pay CT Page 992 3 anything now. 4 MR. COHAN: If I get some extra money, I can 5 offer it to them? 6 THE COURT: There's nothing to stop you from 7 doing that, sir. 8 MR. COHAN: Okay. 9 MR. PAUL: Thank you. 10 MR. COHAN: Thank you, Your Honor. 11 THE COURT: Okay? Thank you.
 CERTIFICATION
I hereby certify that the foregoing pages contain a true and accurate copy to the best of my ability of the aforementioned matter, heard before the Honorable A. Susan Peck, Judge, of the Superior Court, in Hartford, Connecticut, on August, 20, 2001.
Dated in Hartford, Connecticut, on the 18th day of January, 2002.
Kelly Laughery
Court Monitor